# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 297 | **DATE** | 5/4/2001 |
| **CASE TITLE** | Hernandez et al vs. Bd of Education et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 5/16/2001 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Plaintiffs' motions (Docs 12-2, 16-1 & 16-2) for court to consider additional evidence and for a preliminary and permanent injunction are granted in part and denied in part. In presenting their case for review of the Administrative Order, Plaintiffs may present evidence concerning relevant events occurring subsequent to the September 2000 due process hearing. Furthermore, a preliminary injunction shall issue on the terms set for in Part II.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAY 07 2001 | |
| | Notified counsel by telephone. | date docketed | 21 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | 01 MAY -4 PM 3:31 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE THE MATTER OF: | ) | **DOCKETED** |
| | ) | |
| MR. AND MRS. JOSE C. HERNANDEZ, JR., | ) | MAY 0 7 2001 |
| INDIVIDUALLY AND AS PARENTS AND | ) | |
| NEXT FRIENDS OF J.V.H., A MINOR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 01 C 297 |
| | ) | |
| THE BOARD OF EDUCATION OF | ) | |
| THE CITY OF CHICAGO, PAUL G. VALLAS, | ) | |
| CHIEF EXECUTIVE OFFICER; THE | ) | |
| ILLINOIS STATE BOARD OF EDUCATION, | ) | |
| GLEN W. MCGHEE, SUPERINTENDENT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on Plaintiffs' motions for the court to consider additional evidence and for a preliminary and permanent injunction. For the reasons set forth below, both motions are granted in part and denied in part.

### BACKGROUND

Plaintiffs Jose and Elena Hernandez are the parents of J.V.H., a seventh grade student at Kinzie School in Chicago, Illinois. Kinzie School is a free public school

maintained by Defendant the Board of Education of the City of Chicago (the "School Board"). J.V.H. began receiving special education services in the School Board's schools (the "Chicago Public Schools") when he was diagnosed with a speech/language impairment at the age of seven. In February 2000, when J.V.H. was in sixth grade, Plaintiffs contacted the School Board and requested a conference regarding what Plaintiffs perceived to be the increased special education needs of their son.

On April 7 and 12, 2000, J.V.H.'s mother and her attorney met with School Board personnel, including J.V.H.'s case manager and special education teacher, one of his general education teachers, a school psychologist, a school social worker, a behavior therapist, and audiologist, and the school nurse, in an effort to develop a mutually agreeable Individualized Education Program (IEP) for the student. At this meeting, the participants discussed recent evaluations of J.V.H.'s learning and behavioral problems. In particular, the mother indicated that J.V.H. had recently seen a psychiatrist and been diagnosed with Attention Deficit Disorder (ADD). She further stated that her son had been evaluated by a cognitive/educational diagnostician from Acacia Academy, a private therapeutic day school serving eligible children with ADD, learning disabilities, and emotional and behavioral disorders. The diagnostician had found weaknesses in J.V.H.'s auditory processing and decoding and encoding skills

and had suggested certain accommodations and instructional techniques for addressing these problems.

Based on this IEP conference, the School Board declared J.V.H. to be eligible for special education in the categories of "learning disability" and "other health impairment" (his ADD). Plaintiffs had also specifically requested that J.V.H. be declared eligible in the categories of "emotional/behavior disorder" and "multiple disabilities," claiming that J.V.H. suffered from anxiety and bipolar disorder. The School Board rejected this request since in its opinion J.V.H. had not shown signs of a behavioral disorder in the educational setting. It therefore developed an IEP targeted only at J.V.H.'s learning disabilities and ADD. In particular, the School Board scheduled J.V.H. to receive 30 minutes of "Earobics" three times per week for twelve weeks, study guides, audio-tapes of social studies lessons, 200 minutes per week each of special education ("LD") instruction in reading decoding and language arts, 30 minutes per week of social work services, and 15 minutes per quarter of audiological consultation.

Plaintiffs were dissatisfied with the School Board's eligibility determination and the resulting IEP. On June 14, 2000, they appealed the School Board's decisions to Defendant Illinois State Board of Education (ISBE). Under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (IDEA or the "Act"), the parents

of a child with a disability may file a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to him or her. See 20 U.S.C. § 1415(b)(6). Having filed such a complaint, the parents are entitled to an impartial due process hearing conducted by the state or local educational agency. See 20 U.S.C. § 1415(f). Plaintiffs' due process hearing was held before ISBE hearing officer Stacy Stutzman on September 5 and 6, 2000; both Plaintiffs and the School Board were represented by counsel. Both sides presented documentary evidence and witness testimony. Plaintiffs called psychologist John Lynch, psychiatrist Alfreda Grosrenaud, the Director of Acacia Academy, and J.V.H.'s mother. The School Board called the school psychologist, social worker, and special education teacher who had participated in the IEP conference, as well as a School Board audiologist and behavior therapist.

On September 16, 2000, the hearing officer issued a Decision and Order upholding the School Board's refusal to categorize J.V.H. as a student with an emotional/behavior disorder and as "multiply disabled." See September 16, 2000, Decision and Order, attached as Exhibit 1 to Plaintiffs' complaint (hereinafter, "Administrative Order"), at p. 9. During the hearing, Plaintiffs had suggested that J.V.H. should be transferred from Kinzie School to Acacia Academy, a private program approved by the ISBE for special education placements. The hearing officer

disagreed, finding that the least restrictive environment in which J.V.H.'s needs could be met was in the Kinzie School placement, with the additional special education services set forth in the IEP. Finally, the hearing officer concluded that the School Board had for the most part provided J.V.H. with a free, appropriate public education as required under the IDEA. She therefore ordered the School Board to implement the IEP as written, with one exception. The hearing officer noted that the IEP failed to quantify J.V.H.'s current and intended future performance levels in such a way as to permit meaningful measurement of his educational progress. She therefore ordered the School Board to modify the IEP to clearly state J.V.H.'s then-current levels of performance in the areas of word attack skills and language arts, the specific basis for those stated levels, the performance levels desired to be achieved, and the specific tests to be used to measure the student's progress.

With respect to past services, the hearing officer observed that Plaintiffs had asked the School Board to implement the IEP as an interim measure pending the outcome of their due process appeal, but that the School Board had not done so. Accordingly, she ordered the School Board to provide J.V.H. with 450 minutes of one-on-one instructional services from a certified LD teacher and 90 minutes of direct social work services as compensation for the services it failed to provide during the week of August 21-September 4, 2000.

Following the hearing, the School Board did not fully implement the IEP or provide the compensatory services as ordered. The Board has attributed this initial failure to comply with the Administrative Order to the fact that one of Kinzie School's two LD teachers took an extended leave of absence to tend to a family emergency. In letters to Plaintiffs, the School Board indicated that it was providing services at a reduced level until it could find a qualified replacement LD teacher. Plaintiffs complained to the ISBE, and the ISBE responded by instructing the School Board to provide the ordered services even if that meant transferring J.V.H. to a school where the full range and amount of services were available.

In December 2000, the School Board decided to transfer J.V.H. to Hale School, where, it claimed, it could provide him with the mandated services. Plaintiffs reluctantly accepted the proposal while reserving their right to appeal the Administrative Order. In preparation for the transfer, the School Board drafted a new IEP (the "December 2000 IEP") which was substantially the same as the April 2000 IEP approved by the hearing officer. This new IEP documented an agreement by the School Board to provide J.V.H. with 100 minutes per week of compensatory LD support for the remainder of the school year over and above the 450 compensatory minutes required by the Administrative Order. The ISBE reviewed the new IEP and found that if services were provided according to its terms, the School Board would be

in compliance with the Administrative Order. On January 8, 2001, J.V.H. began school at Hale. According to Plaintiffs, the transfer did not have the promised effect; J.V.H. did not receive the full range of services while at Hale.

On January 16, 2001, Plaintiffs filed this action for administrative review of the hearing officer's decision. The complaint takes issue with the IEP and the Administrative Order upholding it, alleging that the proposed program is insufficient to meet the educational needs of the child. Shortly after filing the complaint, Plaintiffs moved for preliminary and permanent injunctive relief. They argued that the School Board had repeatedly violated both its general statutory obligations under the IDEA and the specific terms of the September 16, 2000, Administrative Order. According to Plaintiffs, these violations constituted a failure on the part of the School Board to provide J.V.H. with a free, appropriate public education within the Chicago Public Schools such that a transfer to the private Acacia Academy, at public expense, was warranted. In the alternative, Plaintiffs sought specific enforcement of the terms of the Administrative Order, *i.e.* the provision of the mandated services at J.V.H.'s home school, Kinzie School.

At the hearing on Plaintiffs' motion, counsel for the School Board indicated that the School Board was prepared to transfer J.V.H. back to Kinzie and to provide him with the full range of services there. Based on these representations, the Court denied

the motion for injunctive relief, without prejudice, and ordered J.V.H. transferred back to Kinzie School. The transfer was effected on January 20, 2001.

On March 22, 2001, Plaintiffs filed a second motion for injunctive relief,[1] alleging that the School Board has failed to provide J.V.H. with the mandated services since his return to Kinzie. On this basis, Plaintiffs seek a court order requiring the full range of mandated services to be provided, starting immediately, during the regular school day at Kinzie School. Although the motion initially included a request for a transfer to Acacia Academy, a private day school, Plaintiffs' reply indicates that they presently seek only compliance with the terms of the December 2000 IEP. (See Plaintiffs' Reply at p. 4.)

In a separate motion, Plaintiffs have sought reconsideration of our denial, as moot, of their motion for the court to hear additional evidence outside the administrative record. We have agreed to reconsider that decision.

---

[1] Although Plaintiffs' motion is entitled "Plaintiff's Second Motion for Preliminary and Permanent Injunctive Relief," Plaintiffs do not actually appear to be seeking a permanent injunction at this stage of the proceedings. The prayer for relief in Plaintiffs' motion only includes requests for a temporary restraining order and a preliminary injunction. Moreover, both the School Board in its response to the motion and Plaintiffs in their reply treat the motion as one for preliminary injunctive relief only. We believe this to be the appropriate vehicle, as the case is not yet postured for final adjudication. See Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n. 12, 107 S. Ct. 1396 (1987) (permanent injunction may issue only after valid adjudication on merits). To the extent that Plaintiffs are currently moving for permanent injunctive relief, that motion is denied without prejudice.

# DISCUSSION

## I. Motion to introduce additional evidence

Under 20 U.S.C. § 1415(i)(2), any party aggrieved by the findings and decision made pursuant to an IDEA due process hearing may bring a federal action challenging the decision. In adjudicating such a claim, the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." Despite the compulsory language of the statute, a district court is not required to allow all evidence proffered by the plaintiff in an IDEA proceeding. Monticello School District No. 25 v. George L., 102 F.3d 895, 901 (7th Cir. 1996). In particular, the Court has discretion to disallow evidence that would "change the character of the hearing from one of review to a trial *de novo*." Id. (quoting Town of Burlington v. Department of Education, 736 F.2d 773, 791 (1st Cir. 1984), aff'd 471 U.S. 359, 105 S. Ct. 1996, and citing Susan N. v. Wilson School District, 70 F.3d 751 (3rd Cir. 1995) and Ojai Unified School District v. Jackson, 4 F.3d 1467 (9th Cir. 1993), cert. denied, 513 U.S. 825, 115 S. Ct. 90).

Plaintiffs identify two witnesses from whom they hope to elicit additional testimony. The first, Dr. John Lynch, is a private psychologist who has been treating J.V.H. since Spring 1999. According to Plaintiffs, the hearing officer "discounted"

Lynch's testimony because J.V.H. had only been seeing him since the end of the previous school year. By now, the problem of the brevity of the relationship has been cured. Plaintiffs therefore seek leave to have Dr. Lynch testify to J.V.H.'s current condition as well as the harm he has suffered as a result of the School Board's delay in providing him with necessary services.

Plaintiffs would also like to present the testimony of Dr. Howard Atlas, a school psychologist and Director of Personnel Services (Special Education Department) for the Waukegan Schools. Dr. Atlas would testify about J.V.H.'s current needs and the harm the School Board has allegedly caused by failing to implement the IEP in J.V.H.'s home school. Dr. Atlas did not testify at the due process hearing. Rather, Plaintiffs at that time presented an independent evaluation they had obtained from the Director of the Acacia Academy. Plaintiffs claim that this evaluation is outdated and was "discounted, without comment," by the hearing officer. They therefore seek to replace or supplement it with Dr. Atlas' current evaluation of J.V.H.'s situation.

Finally, in their prayer for relief, Plaintiffs indicate a desire to present additional documentary evidence. They do not discuss this request in any detail or provide reasons why additional documentation is required.

The Seventh Circuit has not spoken with specificity on the issue of when a district court must hear testimony at the request of a party in an IDEA proceeding.

Patricia P. v. Board of Education of Oak Park, 203 F.3d 462, 470 (7th Cir. 2000). We are admonished simply to be mindful of the scope of our review of an IDEA administrative decision. Id. As noted above, and contrary to Plaintiffs' suggestion, the Court does not review the administrative decision *de novo*. See Monticello, 102 F.3d at 901. At the same time, the Court must do more than merely determine that the administrative findings are based on substantial evidence. Patricia P., 203 F.3d at 466. In sum, we "must independently determine whether the requirements of the [IDEA] have been satisfied," while giving "due weight" to the results of the administrative decision by refraining from substituting our own notions of sound educational policy for those of the administrative decisionmakers. Id.; see also Board of Education v. Rowley, 458 U.S. 176, 206, 102 S. Ct. 3034 (1982).

We believe Plaintiffs are correct in asserting that some evidence of J.V.H.'s current medical and psychological condition, as well as evidence of the continuing, post-Administrative Order impact of the School Board's alleged failure to provide J.V.H. with the necessary range of services, would aid the Court in making an independent determination of the School Board's compliance with the IDEA. It would therefore be appropriate for Plaintiffs to present limited testimonial or documentary evidence on these subjects. See Walker County School District v. Bennett, 203 F.3d 1293, 1298-99 (11th Cir. 2000) (quoting Town of Burlington v. Department of

Education, 736 F.2d 773, 791 (1st Cir. 1984)) (evidence concerning relevant events occurring subsequent to administrative hearing is properly admitted under 20 U.S.C. 1415(i)(2)). At the same time, Plaintiffs may not simply reintroduce evidence that was aired at the administrative hearing. For example, Plaintiffs allude in their motion to witness testimony that was "discounted," for various reasons, by the hearing officer. Even though Plaintiffs may disagree with the weight assigned to that testimony at the administrative level, the Court will not rehear evidence that is already part of the administrative record. To the extent that Plaintiffs seek to recall witnesses to repeat their prior testimony, therefore, that request is denied.

We therefore grant Plaintiffs' motion to the extent they seek leave to present evidence concerning relevant events occurring subsequent to the September 2000 administrative hearing. Insofar as Plaintiffs seek to present any other evidence outside the administrative record for consideration by the Court in its independent review of the IEP, that request is denied.

## II. Motion for preliminary injunctive relief

When considering a motion for a preliminary injunction, a district court must weigh several factors. The court must first determine whether the moving party has demonstrated some likelihood of prevailing on the merits and an inadequate remedy at law and irreparable harm if the injunction does not issue. Meridian Mut. Ins. Co. v.

Meridian Ins. Group, Inc., 128 F.3d 1111, 1114 (7th Cir. 1997). In addition, the court must weigh any irreparable harm the non-moving party may suffer if the injunction is granted against the irreparable harm to the movant if relief is denied and must evaluate the effect of granting or denying the injunction on nonparties such as the general public. Id. The party seeking injunctive relief has the burden of persuasion with respect to each of these four factors. Daniels v. Southfort, 6 F.3d 482, 485 (7th Cir. 1993).

The purpose of a preliminary injunction is to preserve the status quo pending resolution on the merits. EEOC v. City of Janesville, 630 F.2d 1254, 1259 (7th Cir. 1980). Under the Administrative Order and the December 2000 IEP drafted by the School Board itself, the School Board is obligated to provide J.V.H. with a weekly minimum of 500 minutes of L.D. services, plus specified amounts of earobics, audiology consultation, and social work, until the end of the school year. Plaintiffs seek to maintain and enforce this status quo via an injunction ordering the School Board to provide services it acknowledges it is obligated to provide.

The parties disagree about the exact number of hours of special education J.V.H. has received since his return to Kinzie. The evidence -- primarily in the form of an affidavit from J.V.H.'s Kinzie School case worker, Gloria Studnicka, and log sheets prepared by J.V.H. and his teachers at the time that services are provided -- is in

conflict. It is clear, however, that J.V.H. is not currently receiving the full range and amount of services the School Board has agreed and been ordered to provide him.

The School Board claims there are simply not enough hours in the school day to enable J.V.H. to receive compensatory services in addition to his regular education and the routinely-scheduled special services. It has therefore offered to provide the services after school. According to Plaintiffs, J.V.H. attended these after-school sessions on two occasions but was physically attacked as he walked home alone both times. Thereafter, Plaintiffs refused to allow J.V.H. to stay after school for L.D. instruction. As a result, J.V.H. has not been receiving the 500 minutes of weekly L.D. instruction to which he is entitled under the December 2000 IEP.

More than a year has passed since the School Board formally recognized J.V.H.'s need for special education services, and yet he has never consistently received those services in the Chicago Public Schools. We therefore think it appropriate to enter an injunction ordering the School Board to comply with its obligations under the December 2000 IEP. Plaintiffs have clearly shown a likelihood of success on the merits of their contention that the School Board must provide the services mandated by the Administrative Order and promised in the December 2000 IEP. Indeed, this point is virtually undisputed. For obvious reasons, money damages would not adequately compensate J.V.H. for the loss of an effective seventh-grade education.

Because the School Board is already obligated to provide the services in question, it would not be harmed significantly by the proposed injunction; J.V.H.'s recent test scores indicate that the student, on the other hand, is likely being harmed by the absence of L.D. instruction. Nor would issuing the injunction negatively impact the general public. The provision of services at Kinzie School is the least expensive of the available alternatives. And as Plaintiffs point out, the public interest will only be served by the School Board's providing J.V.H. with an education calculated to contribute to his development as a productive citizen. Accordingly, we find that Plaintiffs have carried the burden of persuasion with respect to all four prongs of the test, and a preliminary injunction is warranted.

With respect to the timing of the services, the Court cannot simply disregard Plaintiffs' safety concerns and order after-school instruction as the School Board suggests. At the same time, we must recognize the practical realities of the situation. The School Board insists that it cannot provide both the routine and compensatory services it owes J.V.H. during normal school hours while at the same time giving him the mainstream general instruction he needs to advance academically. We cannot order it to undertake the impossible; some accommodation is necessary.

We therefore think it most appropriate to issue an injunction on the following terms:

(1) For the remainder of the 2000-2001 school year, the School Board shall provide J.V.H. with the following services:

(a) 500 minutes per week of LD instruction (200 in reading decoding, 200 in language arts, 100 compensatory);

(b) Earobics three (3) times per week;

(c) 30 minutes per week of social work;

(d) 15 minutes per quarter of consultation with an audiologist;

(e) study guides; and

(f) audio-tapes of social studies lessons.

(2) Plaintiffs and the School Board shall cooperate in good faith to develop a reasonable schedule for the provision of the compensatory services. It shall be the School Board's obligation to ensure that the mandated services are provided at a time and in a manner that does not jeopardize the student's physical safety. If the School Board determines that services must be provided outside regular school hours, the principal of Kinzie School shall meet with Plaintiffs within seven (7) days of entry of this order to negotiate a reasonable solution to any safety problems posed by the timing of the instruction.

(3) Nothing in this order shall be read to relieve the School Board of its obligation to provide any additional compensatory services it may owe J.V.H. pursuant to the terms of the Administrative Order and/or the December 2000 IEP.

## CONCLUSION

For the foregoing reasons, the motions are granted in part and denied in part.

In presenting their case for review of the Administrative Order, Plaintiffs may present

evidence concerning relevant events occurring subsequent to the September 2000 due process hearing. Furthermore, a preliminary injunction shall issue on the terms set forth in Part II, above.

_____
Charles P. Kocoras
United States District Judge

Dated: May 4, 2001